IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADAM EHRLICH,** *et al.***,** | : | **CIVIL ACTION** |
| | : | |
| Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 25-4366** |
| **CITY OF PHILADELPHIA,** *et al.***,** | : | |
| | : | |
| Defendants. | : | |

**Perez, J.**                                                                                                          **May 14, 2026**

## MEMORANDUM

This civil rights action stems from the City of Philadelphia's ("City") treatment of 2837 Kensington Avenue, a property Plaintiffs describe as the "Triple X" property. Plaintiffs Adam Ehrlich and A Kensington Joint LLC allege that City actors targeted the property, not through ordinary code enforcement alone, but through a coordinated effort to force it out of operation and pave the way for demolition. They bring claims under § 1983 and state law against the City, several police officers and City personnel, Mayor Cherelle Parker, and former Mayor James Kenney (collectively "City Defendants").

City Defendants now move to dismiss Mayor Parker and former Mayor Kenney ("Mayoral Defendants") from the action, arguing that the Complaint does not allege facts showing either mayor's personal involvement in the alleged constitutional violations. The Court agrees that the current pleading is insufficient, but because Plaintiffs may be able to cure that deficiency with more specific allegations, the Court will dismiss the claims against Mayoral Defendants without prejudice and grant Plaintiffs leave to amend.

1

City Defendants also seek dismissal of Count IX, the substantive due process claim. The Court agrees that the challenged actions are governed by more specific constitutional provisions and claims already pleaded, so the Court will dismiss Count IX without prejudice to Plaintiffs pleading a distinct substantive due process theory if they can do so.

## I.     LEGAL STANDARD

A defendant may move to dismiss a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a [plaintiff's] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a Rule 12(b)(6) motion to dismiss, this Court accepts Plaintiffs' allegations in their Complaint as true and makes reasonable inferences based on the facts, in the light most favorable to Plaintiffs. *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). This Court need not accept legal conclusions and conclusory statements in the Complaint. *Id.*

## II.    BACKGROUND OF THE CASE

Plaintiff Adam Ehrlich buys and sells property in Philadelphia, with what the Complaint describes as a "notable interest and focus" in the Kensington neighborhood. Compl. ¶ 14, ECF No. 1. In 2020, an LLC affiliated with Ehrlich purchased 2837 Kensington Avenue, a property long known in the neighborhood as the "Triple X" property due to its former adult-entertainment use and illuminated "XXX VIDEO" signage. *Id*. ¶¶ 14–18.

Plaintiffs allege that, after Ehrlich acquired Triple X, City actors treated the property as a nuisance to be eliminated and undertook a targeted effort to shut it down. *See id*. ¶¶ 19–30. According to Plaintiffs, that effort proceeded in stages. The City first boarded and sealed the

property, caused utilities to be disconnected, and treated the building as a nuisance. *Id*. ¶¶ 19–27. It then issued structural violations and sought emergency demolition relief in state court. *Id*. ¶¶ 31–35. Plaintiffs contend these actions were not isolated enforcement measures, but steps in a coordinated effort to carry out the City's preexisting decision to remove the Triple X property from operation. *See id*. ¶¶ 19–35.

City Defendants offer a different explanation. In their view, the utility shutoffs, code violations, and demolition proceedings were legitimate responses to unsafe or nuisance conditions at the property. Their competing characterization does not control at the pleading stage. The Court must accept Plaintiffs' well-pleaded factual allegations as true and draw reasonable inferences in their favor. The relevant question, therefore, is not whether Plaintiffs' account or City Defendants' account is ultimately correct, but whether Plaintiffs have pleaded facts showing that Mayor Parker or former Mayor Kenney was personally involved in the alleged misconduct.

The principal allegation against Mayoral Defendants appears in paragraph 28 of the Complaint. Plaintiffs allege that, in 2022, before any structural code violations were issued, a meeting occurred involving "at least one" City Councilmember, "the Mayor of the City of Philadelphia (or a representative from the Mayor's Office)," and Dr. Bill McKinney of the New Kensington Community Development Corporation. *Id*. ¶ 28. The meeting concerned Ehrlich's acquisition of the Triple X property and was held "to form policy" and "to find a way to rid Kensington" of the building despite its claimed lawful operating rights. *Id*. Plaintiffs further allege that the "policy-decision to demolish" the property was made before any structural code violations were issued. *Id*. ¶¶ 29–30.

The Complaint then turns to the events of August 2023, which supply much of the factual basis for Plaintiffs' police-related claims. Plaintiffs allege that, despite a Commonwealth Court stay of the demolition order, City actors continued to take action at the property, including excluding Plaintiffs from the premises and removing or seizing property. *Id.* ¶¶ 36–45. Sheriff's deputies and L&I personnel removed occupants and boarded or sealed the building, and Philadelphia police officers later allegedly entered or interfered with the property without lawful authority. *Id.* On August 2, 2023, Ehrlich returned to the property with the Commonwealth Court order. *Id.* ¶¶ 46–83. Police forced him out, arrested him for defiant trespass while he was standing on or near a public sidewalk, and seized his firearm, ammunition, License to Carry Firearms, bags, and personal materials. *Id.*

The Complaint asserts ten counts. Counts I through V concern the police encounter and arrest, including unreasonable search and seizure, false arrest, excessive force, and related state-law claims. Count VI concerns the seizure of Ehrlich's firearm-related property and the suspension or revocation of his License to Carry Firearms. Count VII asserts a Takings Clause claim against the City. *Id.* ¶¶ 84–153. The claims most relevant here are Counts VIII, IX, and X. Count VIII asserts a claim for violation of procedural due process against the City, Mayor Parker, former Mayor Kenney, and Lieutenant Newsome. *Id.* ¶¶ 154–59. Count IX asserts a substantive due process claim against the same Defendants and alleges that the challenged conduct was part of a "pre-planned effort to remove Plaintiff's building by any means necessary." *Id.* ¶¶ 160–68. Count X asserts a claim of conspiracy to deprive civil rights against all Defendants. *Id.* ¶¶ 169–73.

City Defendants now move to dismiss all claims against Mayoral Defendants and, separately, to dismiss Count IX. ECF No. 11. Plaintiffs oppose dismissal and rely principally on

the allegations in paragraphs 28 through 30 to connect the Mayoral Defendants to the alleged policy-level decision concerning the property. ECF No. 12.

## III.    DISCUSSION

### A.  Plaintiffs Have Not Plausibly Pleaded Personal Involvement by Mayoral Defendants.

Plaintiffs seek to proceed against Mayor Parker and former Mayor Kenney in their individual capacities under 42 U.S.C. § 1983. They cannot do so on the current Complaint. Although Plaintiffs allege a broader City policy or campaign concerning the Triple X property, the Complaint does not plead facts showing that either Mayor Parker or former Mayor Kenney personally directed, participated in, knew of, or acquiesced in the alleged constitutional violations. The claims against Mayoral Defendants will therefore be dismissed without prejudice.

Section 1983 imposes liability only on a defendant who, acting under color of state law, personally caused the deprivation of a federal right. *Iqbal* itself makes clear that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). There is no respondeat superior liability under § 1983. *Id.*; *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For individual supervisory defendants, the Third Circuit requires allegations of personal involvement, which may be shown through personal direction, actual knowledge and acquiescence, or the supervisor's own deliberate conduct. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). Those allegations must be pleaded with particularity. *Id*.

A supervisor may be liable in limited circumstances where the supervisor established and maintained a policy, practice, or custom that directly caused the constitutional harm, or where the

supervisor participated in, directed, or knowingly acquiesced in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004); *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316–17 (3d Cir. 2014), *rev'd on other grounds*, 575 U.S. 822 (2015). The mere fact that a defendant holds a high public office is not enough. A complaint must tie the individual official to the alleged violation with facts showing what the official did, knew, approved, or deliberately ignored. *See Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010); *Evancho v. Fisher*, 423 F.3d 347, 353–54 (3d Cir. 2005).

Plaintiffs' theory is that the City decided to eliminate the Triple X property first and supplied enforcement justifications later. To proceed against the Mayoral Defendants individually, however, Plaintiffs must tie that alleged decision to Mayor Parker or former Mayor Kenney. Paragraph 28 is the closest the Complaint comes. It alleges a 2022 meeting among a City Councilmember, either "the Mayor of the City of Philadelphia" or a "representative from the Mayor's Office," and Dr. Bill McKinney of the New Kensington Community Development Corporation. Compl. ¶ 28, ECF No. 1. Plaintiffs treat that meeting as the point at which the City allegedly decided to target the property, with the structural citations and demolition proceedings following as steps to carry out that decision. *Id*. ¶¶ 28–30. Those allegations may bear on Plaintiffs' municipal liability theory against the City, but they do not plausibly plead individual liability against either Mayor. Paragraph 28 is framed in the alternative and does not allege who attended the meeting, what that person said, what decision that person made, or how either named Mayoral Defendant personally participated in later enforcement, demolition, police, seizure, or due-process events. Alleging involvement by "the Mayor's Office" is not the same as alleging personal involvement by Mayor Parker or former Mayor Kenney.

The timing of the 2022 meeting underscores the need for specificity here. At that point, former Mayor Kenney was in office and Mayor Parker was not, effectively creating different pleading burdens as to each Mayor, and the Complaint satisfies neither. For Mayor Parker, Plaintiffs do not allege that she attended the meeting, knew about it after taking office, ratified any decision made there, or personally directed any later action involving Plaintiffs or the property. For former Mayor Kenney, Plaintiffs do not allege that he personally attended the meeting, approved the alleged policy, directed enforcement action, or knew of and acquiesced in the constitutional violations that allegedly followed. Instead, the Complaint relies on undifferentiated references to "the Mayor" and the "Mayor's Office." Those collective allegations do not plausibly plead either Mayor's personal involvement under *Iqbal* and *Rode*.

Policymaking authority is not a substitute for personal involvement. A final policymaker's decision may support municipal liability against the City under *Monell*, but Plaintiffs have sued Mayor Parker and former Mayor Kenney individually. Individual capacity liability requires more than an allegation that an office with policymaking authority was involved. It requires facts showing that the particular defendant, through that defendant's own actions, caused or knowingly acquiesced in the alleged constitutional deprivation. *Iqbal*, 556 U.S. at 676; *Evancho*, 423 F.3d at 353. The current Complaint does not provide that link.

For these reasons, Plaintiffs have not stated individual capacity claims against Mayor Parker or former Mayor Kenney. The City Defendants' motion will be granted as to Mayoral Defendants. The remaining question is whether dismissal should be with prejudice. It should not be. In civil rights cases, leave to amend should generally be granted unless amendment would be inequitable or futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Grayson*

*v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002). Futility means that the amended complaint would still fail to state a claim. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

At this stage, the Court cannot conclude amendment would necessarily be futile. Plaintiffs represent that they can add more detail about the alleged 2022 meeting and the materials on which the allegations in paragraphs 28 through 30 are based. The Court expresses no view on whether any amended allegations will be sufficient, but Plaintiffs should have an opportunity to plead, if they can do so consistent with Rule 11 of the Federal Rules of Civil Procedure, facts showing each Mayoral Defendant's personal involvement. Accordingly, the claims against Mayor Parker and former Mayor Kenney will be dismissed without prejudice, and Plaintiffs will be granted leave to amend.

### B. Count IX Does Not State an Independent Substantive Due Process Claim.

Count IX tries to gather the Complaint's separate constitutional theories under one broad label: substantive due process. That approach does not work because the Due Process Clause is not a fallback provision for conduct already governed by a more specific constitutional guarantee. Plaintiffs' allegations may support other claims in the Complaint, but they do not support a separate substantive due process claim as currently pleaded.

The Court must analyze constitutional claims under the provision that specifically governs the challenged conduct. Where a particular Amendment "provides an explicit textual source of constitutional protection," that Amendment, "not the more generalized notion of substantive due process," supplies the rule of decision. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The same principle applies beyond excessive force claims. *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Substantive due process is reserved for a narrow category of government action that

is so arbitrary, egregious, or conscience-shocking that it violates the Constitution even apart from any more specific textual protection. *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 399–402 (3d Cir. 2003).

The Third Circuit applies that rule with particular force where plaintiffs attempt to repackage property, seizure, or land-use disputes as substantive due process violations. In *United Artists*, the plaintiff alleged that local officials denied permits and delayed approvals for improper reasons, including political pressure and hostility to the proposed development. 316 F.3d at 398–99. The Third Circuit rejected the more forgiving "improper motive" standard and held that executive land-use decisions violate substantive due process only when they "shock the conscience." *Id*. at 400–02. This intentionally narrow standard does not constitutionalize every dispute over code enforcement, permitting, demolition, nuisance abatement, or municipal land-use judgment. Nor is it enough that officials allegedly acted unfairly, made incorrect enforcement decisions, responded to political pressure, or proceeded in bad faith. *Id*. at 399–402. The question is whether the challenged conduct is so egregious, arbitrary, or abusive that it crosses the constitutional line.

Count IX does not clear that threshold, at least not as an independent claim. Plaintiffs plead that Defendants engaged in a "pre-planned effort to remove Plaintiff's building by any means necessary." Compl. ¶ 164, ECF No. 1. They identify the same conduct described elsewhere in the Complaint: boarding and sealing the property, cutting utilities, pursuing code violations and demolition relief, removing Ehrlich from the property, arresting him, seizing his firearm-related property and personal materials, and affecting his License to Carry Firearms. *Id*. ¶¶ 160–68. Those allegations are serious, but they are already addressed by specific constitutional provisions and counts. The alleged entries, seizures, arrest, and use of force are governed by the Fourth

9

Amendment and are pleaded in Counts I through V. The firearm, ammunition, and license allegations are addressed through the Second Amendment and procedural due process theories in Count VI. The loss or deprivation of property rights is addressed through the Takings Clause in Count VII and procedural due process in Count VIII. Plaintiffs cannot transform those same facts into a separate substantive due process claim by describing the overall course of conduct as arbitrary or conscience-shocking. *Graham*, 490 U.S. at 395; *Lewis*, 523 U.S. at 842.

Although ownership of real property may, in some circumstances, implicate substantive due process, a plaintiff must still allege executive conduct that is conscience-shocking and not more specifically governed by another constitutional provision. *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 141 (3d Cir. 2000). *Nicholas* distinguished between interests that are merely protected by procedural due process and those that are "fundamental" enough to support substantive due process review. *Id*. at 140–43. There, a tenured public employee's interest in continued employment, although protected by procedural due process, was not a fundamental property interest for substantive due process purposes. *Id*. at 142–43. Substantive due process is reserved for a narrow category of property interests and does not apply simply because the plaintiff alleges an arbitrary or wrongful deprivation of property. *Id*. at 140–41. Real property receives greater protection than the employment interest at issue in *Nicholas*, but that does not end the analysis. Here, the Complaint is not aimed at ownership in the abstract. It targets a series of discrete enforcement actions: utility shutoffs, code citations, demolition proceedings, physical exclusion, seizure of property, and alleged lack of process. Those allegations are better evaluated under the constitutional doctrines tailored to those harms, not under substantive due process as a catchall.

Finally, Plaintiffs' allegation that the challenged actions were part of a coordinated governmental conspiracy does not make them separately actionable under substantive due process.

10

A plaintiff cannot transform discrete constitutional grievances into a substantive due process claim by alleging that they were all components of a larger municipal plan. *See Graham*, 490 U.S. at 395. The alleged conspiracy may matter to other theories, including *Monell*, procedural due process, equal protection, or motive-based claims, but substantive due process is not a constitutional umbrella for every injury allegedly produced by coordinated government action.

The Court therefore will dismiss Count IX without prejudice. Plaintiffs may amend if they can plead a substantive due process theory distinct from their Fourth Amendment, Second Amendment, Takings Clause, and procedural due process claims, and that plausibly alleges conscience-shocking conduct under the governing standard.

## IV.   CONCLUSION

For the reasons above, the City Defendants' partial motion to dismiss will be granted. Plaintiffs have not pleaded facts showing that Mayor Parker or former Mayor Kenney was personally involved in the alleged constitutional violations, so all claims against Mayoral Defendants will be dismissed without prejudice and with leave to amend. Count IX will also be dismissed without prejudice, as Plaintiffs' current substantive due process theory duplicates claims governed by more specific constitutional provisions.